## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| Canada Pipeline Accessories Co., Ltd. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:12-cv-08448 |
| | ) | |
| Canalta Controls, Ltd. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

As its Complaint in this action, Plaintiff Canada Pipeline Accessories Co., Ltd. ("CPA"), by its undersigned attorneys, alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

### NATURE OF THE CASE

1.     This is an action for trademark infringement, trade dress infringement, false advertising, and unfair competition under federal, state, and/or common law.  CPA brings this action because Defendant Canalta Controls, Ltd. ("Canalta") has without authorization, manufactured, distributed, and/or sold knock off flow conditioners bearing a mark that is confusingly similar to CPA's trademarks and has made numerous false claims regarding its flow conditioners.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1331 (actions arising

under the laws of the United States), 28 U.S.C. § 1332(a) (diversity of citizenship between the parties), and § 1338(a) (actions arising under an Act of Congress relating to copyrights and trademarks).  This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a).

3.     This Court has personal jurisdiction over the Defendant pursuant to W. Va. Code, § 56-3-33.

4.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. §§ 1391(b).

## THE PARTIES

5.     Plaintiff CPA is a Canadian corporation, with a business address of 10653-46th Street, SE, Calgary, Alberta Canada.

6.     Defendant Canalta is a Canadian corporation with a business address of 6759 65th Avenue, Red Deer, Alberta, Canada.

## CPA AND ITS TRADEMARKS

7.     CPA is a family owned business dedicated to research, development and sale of cutting edge flow measurement technology for the oil and gas industries and related consulting.  Since its inception, CPA has continuously manufactured, developed, produced and sold its line of flow measurement devices, including flow conditioners (devices for regulating fluid flow in pressurized pipelines) and flow nozzles throughout the United States and internationally.

2

8.      Over the years, CPA has been a frequent presenter at oil and gas industry professional conferences and workshops and published numerous articles directed to flow conditioner performance and design.

9.      In its markets, CPA's products and services are regarded as being of the highest quality and reliability.  CPA has and continues to be dedicated to providing precision engineered products and excellent customer service.  CPA enjoys an unparalleled reputation as a leader in its field.  This reputation is a direct result of its high engineering standards, its careful selection of quality materials, its dedication to customer service, and the efforts of its employees to maintain the highest levels of integrity in their marketing and sales efforts.

10.     For over fifteen years, CPA has actively and continuously promoted itself and its products through various channels in the trade including, through regional and national distributors, extensive participation in professional conferences.

11.     As a result of its programs and efforts, CPA has established very substantial goodwill and a correspondingly substantial network of regional and national product distribution channels since it commenced its business.

12.     A flagship product in CPA's product line is its line of flow conditioners.  Since at least as early as 1999, CPA has been continuously marketing and selling flow conditioners under the CPA 50E® and 50E®trademarks (the "CPA Marks").

13.     CPA has continuously sold and distributed such flow conditioners directly through distributors and promoted its flow conditioners at oil and gas industry professional conferences and workshops.  As such, CPA has developed substantial trademark rights in the CPA Marks.

14.     Since the first introduction of its flow conditioners, CPA has made substantially exclusive and continuous use of the CPA Marks on or in connection with its flow conditioners.

15.     CPA's flow conditioners have become so well accepted that several companies' product specifications explicitly require use of CPA 50E® flow conditioners in their pipeline systems due to the high level of quality and reliability of the flow conditioners.

16.     Over the years, CPA's flow conditioners have been subject to extensive testing and, as a result, are fully compliant with American Gas Association specifications.

17.     CPA is the owner of United States Federal Trademark Registration No. 3934642 ("the '642 Registration") of 50E as applied to Flow Conditioners.  This registration is valid, subsisting, and in full force and effect.  A true and correct copy of the '642 Registration is attached hereto as Exhibit A.

18.     CPA is the owner of United States Federal Trademark Registration No. 2994138 ("the '138 Registration") of CPA 50E as applied to Flow Conditioners.  This registration is valid, subsisting, in full force and effect and has become incontestable pursuant to 15 U.S.C. §1065.  A true and correct copy of the '138 Registration is attached hereto as Exhibit B.


## THE CPA TRADE DRESS

19.     CPA is the owner of unique and distinctive trade dress in the overall non-functional appearance of its flow conditioners including one or more of the following features:  the unique hole pattern on the face of the flow conditioner, the concentric

4

grooves disposed on the flange of the flow conditioner, the shiny silver metallic finish and the trademark marking along the flange side wall.

20.     Consumers immediately identify CPA as the single source of high quality products bearing the CPA trade dress.

21.     The CPA trade dress is non-functional as applied to CPA's products.

22.     CPA has employed the CPA trade dress associated with flow conditioners and other products exclusively and without interruption, and the CPA trade dress has never been abandon.

## CANALTA'S WRONGFUL ACTS

23.     Upon information and belief, Canalta is engaged in designing, manufacturing, advertising, promoting, distributing, selling and/or offering for sale of knock off flow conditioners in direct competition with CPA and in violation of CPA's rights.  Canalta markets the knock off flow conditioners under at least the following spurious marks: Contour 50, Contour 50F and Contour 50P.

24.     Upon information and belief, on or about August 14-17 2012, at the Appalachian Gas and Measurement Short Course ("the AGMS Course") in Pittsburgh, PA, Canalta displayed and offered for sale a knock off flow conditioner under the "Contour 50F" designation.  Canalta displayed the Contour 50F side-by-side with the CPA 50E® in a blatant attempt to cause customer confusion.  A photograph of the CPA display from the AGMS Course is attached hereto as Exhibit C.

25.     Upon information and belief, during the AGMS course, a Canalta employee, Mr. Steve Ecklund, made individual sales calls to CPA customers and told those customers

that:  (1) the Contour 50F was designed and built exactly the same as the CPA 50E®, (2) the Contour 50F would work better than the CPA 50E®, (3) the Contour 50F would sell for 1/10th the price of the CPA 50E®.  Upon information and belief, these statements contain false and/or misleading descriptions of fact, or false and/or misleading representations of fact.

26.    For example, upon information and belief, the Contour 50F was not designed and built exactly the same as the CPA 50E®.

27.    For example, upon information and belief, the Contour 50F's performance is neither better than nor identical to the CPA 50E®'s performance.

28.    Upon information and belief, on or about August 13th, 2012, in a conversation with a CPA sales representative, Mr. Ecklund confirmed that Canalta was selling a copy of the CPA 50E® and told the sales representative that "Canalta has been a clone company forever."

29.    Upon information and belief, during the AGMS Course, Mr. Ecklund met with Cenergy, LLC  of Milton, West Virginia and demonstrated both the Contour 50F and the CPA 50E® flow conditioners.  Mr. Ecklund represented to Cenergy that the Contour 50F was identical to and performed the same as the CPA 50E®.  Mr. Ecklund confirmed that Canalta did not have any performance test data for the Contour 50F.

30.    On or about September 7, 2012, Cenergy purchased several Contour 50F flow conditioners from Canalta.

31.    Upon information and belief, Canalta continued its anticompetitive behavior at the 2012 American School of Gas Measurement Technology ("ASGMT") which took place September 17-20th, 2012.  Canalta approached one of CPA's clients and told the client

that the Contour 50F was manufactured precisely to the dimensions and tolerances of the CPA 50E® and that the test and approval data that exists for the CPA 50E® therefore applies and is effective and transferable for the Contour 50F. Upon information and belief, these statements are false and misleading.

32.     Upon information and belief, Canalta further represented to the CPA client that Canalta had manufactured flow conditioners for CPA and, as such, are an approved CPA vendor.  Canalta has never been a CPA approved vendor.

33.     Upon information and belief, Canalta set up a display of the Contour 50F and the CPA 50E® at the ASGMT identical to the display that Canalta employed at the AGMS Course.  The placement of the Contour 50F side-by-side with the CPA 50E falsely implies that the Contour 50F is equivalent in performance to the CPA 50E®.

34.     Despite admittedly having no performance test data for the Contour 50F, in its product catalogue, Canalta touts that its "Orifice plates and flow conditioners comply with AGA 3.2 specifications."  Upon information and belief, the knock off flow conditioners do not comply with AGA 3.2 specifications.

35.     Canalta is well aware of the fame and strength of the CPA Marks and the CPA trade dress and the substantial goodwill associated therewith.

36.     Canalta has no license, authority, or other permission from CPA to use any of the CPA Marks or the CPA trade dress in connection with designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale flow conditioners.

37.     Canalta continues to promote, market, and sell its knock off flow conditioners to customers in West Virginia and throughout the United States.  Canalta has engaged in such activities knowingly and intentionally or with reckless disregard or willful blindness

to CPA's rights, or with bad faith, for the purpose of trading on the goodwill and reputation of the CPA marks and products.

## COUNT I

### (Trademark Infringement, 15 U.S.C. § 1114)

38.     CPA repeats and realleges the allegations set forth in the preceding paragraphs.

39.     By their unauthorized use of the marks Contour 50, Contour 50F  and Contour 50P for flow conditioners, Canalta has, without CPA's consent, used and is using in commerce a reproduction, counterfeit, copy or colorable imitation of CPA's federally registered "CPA 50E®" and "50E®" trademarks in connection with the sale, offering for sale, distribution and advertising of Canalta's flow conditioners.  Such use is likely to cause confusion or to cause mistake or to deceive in violation of 15 USC. § 1114(1)(a).

40.     By their unauthorized and intended use of the marks Contour 50, Contour 50F and Contour 50P on such flow conditioners, Canalta has, without CPA's consent, reproduced, counterfeited, copied or colorably imitated CPA's federally registered "CPA 50E®" and "50E®" trademarks in connection with the sale, offering for sale, distributing and advertising of Canalta's flow conditioners.  Such use is likely to cause confusion or to cause mistake or to deceive in violation of 15 U.S.C. § 1114(1)(b).

41.     As a result of these wrongful and illegal acts by Canalta, there is damage and a likelihood of further damage and injury to CPA through Plaintiff's loss of control over its "CPA 50E®" and "50E®" marks leading to declining sales and loss of goodwill.

42.     Canalta has unlawfully profited from the unauthorized use of the "CPA 50E®" and "50E®" marks in connection with sales of knock off flow conditioners. CPA is entitled to damages in no event less than said profit by reason of Canalta's infringement of the

CPA Marks. The amount of such damages not being known presently but being ascertainable upon the conduct of appropriate discovery herein.

43.    On information and belief, Canalta's actions have been committed intentionally with the knowledge that the use of such a colorable imitation is likely to cause confusion or to cause mistake or to deceive.

44.    CPA has and is suffering harm and irreparable harm as a result of the actions of Canalta as complained herein. CPA has no adequate remedy at law. Therefore, CPA seeks temporary and permanent injunctive relief against such trademark infringement and all damages recoverable by statute.

45.    CPA is further entitled to exemplary damages from Canalta because Canalta acted with the malice required to support an award of such damages. Canalta acted with the specific knowledge of CPA's trademark rights, with specific intent to cause injury to CPA, with a conscious indifference to the rights or welfare of the CPA, and with actual and/or subjective awareness that its acts involved an extreme degree of risk of harm to CPA and with actual and/or subjective awareness that its acts involved an extreme risk of harm to CPA.

## COUNT II

### (Trade Dress Infringement, 15 U.S.C. § 1125(a))

46.    CPA repeats and realleges the allegations set forth in the preceding paragraphs.

47.    The CPA trade dress has acquired secondary meaning as distributors, retailers and end customers associate the CPA trade dress with CPA.

48.    Canalta's design, manufacture, promotion, distribution, marketing and sale of knock off flow conditioners is intended to cause, has caused, and is likely to continue to

cause confusion, mistake and deception among consumers, the public and the trade who recognize and associate the CPA trade dress with CPA.  Moreover, Canalta's conduct is likely to cause confusion, to cause mistake, or to deceive consumers, the public, and the trade as to the source of Canalta's flow conditioners, or as to possible affiliation, connection or association between Canalta ,CPA and Canalta's flow conditioners.

49.    Upon information and belief, Canalta has acted with knowledge of CPA's ownership of the CPA trade dress and with deliberate intention or willful blindness to unfairly benefit from the substantial goodwill symbolized thereby.

50.    Canalta's acts constitute trade dress infringement in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

51.    Upon information and belief, Canalta has made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

52.    Upon information and belief, Canalta intend to continue their infringing acts, unless restrained by this Court.

53.    Canalta's acts have damaged and will continue to damage CPA, and CPA has no adequate remedy at law.

**COUNT III**

**(False Advertising, 15 U.S.C. §1125(a))**

54.    CPA repeats and realleges the allegations set forth in the preceding paragraphs.

55.    Canalta has made false and/or misleading descriptions, statements or representations of fact in connection with Canalta's knock off flow conditioners as described herein.

56.    Canalta's false or misleading descriptions, statements or representations of fact, misrepresent the nature, characteristics, qualities or geographic origin of Canalta's flow conditioners.

57.    Canalta's are material to consumer's purchasing decisions.

58.    On information and belief, Canalta's literally false and misleading descriptions, representations or statements of fact have caused, are causing, and are likely to continue to cause substantial and irreparable harm to CPA, including damage to CPA's sales, profits, business relationships, reputation, and goodwill.

59.    On information and belief, Canalta's false and misleading representations, statements and descriptions of fact have created independent lingering false and misleading impressions among consumers that must be dispelled by corrective advertising by Defendant.

## COUNT IV

## (False Designation of Origin, 15 U.S.C. § 1125(a))

60.    CPA repeats and realleges the allegations set forth in the preceding paragraphs.

61.    CPA has used its trademarks CPA 50E and 50E on flow conditioners for over 15 years.

62.    Canalta's promotion, advertising, distribution, sale and/or offering for sale of the its Contour 50, Contour 50F and Contour 50P flow conditioners is intended, and is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Infringing Products, and is intended, and is likely to cause such parties to believe in error that the Infringe Products have been

authorized, sponsored, approved, endorsed or licensed by CPA, or that Canalta is in some way affiliated with CPA.

63.    The foregoing acts of Canalta constitute a false designation of origin in violation of Section 43(a) of the Lanham Act (15 U.SC. § 1125(a)).

64.    Upon information and belief, Canalta has made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

65.    Upon information and belief, Canalta intends to continue its infringing acts, unless restrained by this Court.

66.    Canalta's acts have damaged and will continue to damage CPA, and CPA has no adequate remedy at law.

## COUNT V

### (Unfair Competition and Passing Off West Virginia Common Law)

67.    CPA repeats and realleges the allegations set forth in the preceding paragraphs.

68.    By using Contour 50, Contour 50F and Contour 50P on their products, Canalta unfairly competes with CPA by creating the impression among consumers, the public and the trade that CPA has licensed or sponsored Canalta, when in fact it has not. Canalta has and continue to misappropriate CPA's valuable good will and public recognition of the CPA 50E and 50E trademarks which have been developed nationally and in the State of West Virginia over the last fifteen years by CPA, where Canalta has unlawfully benefited and been unjustly enriched by such activities.

69.    Canalta's false Contour 50, Contour 50F and Contour 50P designations constitute unfair competition and passing off under the common law of the State of West

Virginia.  Defendants' practices have and continue to injure CPA, and will cause irreparable harm and damage to CPA unless restrained and enjoined by this Court..

70.     Upon information and belief, Canalta has made and will continue to make substantial profits and gains to which it is not in law or equity entitled.

71.     Canalta's acts have damaged and will continue to damage CPA, and CPA has no adequate remedy at law.

WHEREFORE, CPA respectfully requests that this Court enter judgment against Canalta as follows:

A.     Finding that: (i) Canalta has violated Section 32 of the Lanham Act (15 U.S.C. § 1114); Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and (ii) Canalta have engage in trademark infringement and unfair competition under the common law of West Virginia.

B.     Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 15 U.SC. §1116 preliminarily and permanently restraining and enjoining Canalta, their officers, agents, employees, and attorneys, and all of those persons or entities inactive concert or participation with them from:

a. Manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products which bear the CPA Marks, the CPA Trade Dress, or any other mark or trade dress substantially similar or confusing thereto, including without limitation, the knock off flow conditioners, and engaging in any other activity

constituting an infringement of any of CPA's rights in the CPA Marks and the CPA Trade Dress;

    b.  Engaging in any other activity constituting unfair competition with CPA, or acts and practices that deceive consumers, the public, and/or the trade, including without limitation, the use of designations and design elements associated with CPA; and

    c.  Making any and all statements, representations or descriptions in promotions or advertising (and those substantially similar) found to violate 15 U.S.C. § 1125(a); and

C.    Requiring Canalta to recall from any distributors and retailers and to deliver to CPA for destruction or other disposition all remaining inventory of all knock off flow conditioners, including all advertisements, promotional and marketing materials therefore, as well as means of making same;

D.    Requiring Canalta to distribute corrective advertising , the substance of which to be determined at trial;

E.    Requiring Canalta to file with this Court and serve on CPA within thirty (30) days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Canalta has complied with the injunction;

F.    Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any product at issue in this action has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered

for sale, or sold by Canalta, has been authorized by CPA, or is related in any way with CPA and/or its products;

G.    Ordering Canalta to account to and pay CPA all profits realized by its wrongful acts and also awarding CPA its actual damages, and also directing that such profits or actual damages be trebled, in accordance with Section 35 of the Lanham Act (15 U.SC. § 1117).

H.    Awarding CPA actual and punitive damages to which it is entitled under applicable federal and state laws.

I.    Awarding CPA its costs, attorneys fees, investigatory fees, and expenses to the full extend provided by Section 35 of the Lanham Act ( 15 U.S.C. § 1117).

J.    Awarding CPA pre-judgment interest on any monetary award made part of the judgment against Canalta; and

K.    Awarding CPA such additional and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, CPA requests trial by jury in this matter.

CANADA PIPELINE ACCESSORIES CO., LTD.

By Counsel

_____ /s/ Charles W. Pace, Jr. _____
Robert B. Allen (WVSB # 0110)
Charles W. Pace, Jr. (WVSB # 8076)
KAY CASTO & CHANEY, PLLC
707 Virginia Street, East, Suite 1500
P.O. Box 2031
Charleston, WV 25327
(304) 345-8900
(304) 345-8909    Fax
*(Counsel for Plaintiff)*
rallen@kaycasto.com
cwpace@kaycasto.com

## VERIFICATION OF COMPLAINT

I, Dale Sawchuk, declare that:

1. I am the President of the named plaintiff in this civil action.

2. I have read the foregoing Complaint and am familiar with the allegations and statements contained therein.

3. To the best of my knowledge, information and belief, founded after reasonable inquiry, the allegations in the Complaint are well grounded in fact, are warranted by existing law or good faith argument for extension, modification, or establishment of new law.

4. The foregoing Complaint is not being filed for any improper purpose

5. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Nov. 30/2012
Date

Dale Sawchuk

16